1068

IMPERIAL ASSURANCE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

UNITED FIREMEN'S INSURANCE CO. OF PHILADELPHIA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 29735, 29736. Promulgated May 23, 1930.

*William H. Hotchkiss, Esq.*, for the petitioners.
*Eugene Meacham, Esq.*, and *C. E. Lowery, Esq.*, for the respondent.

OPINION.

BLACK: Section 240 (a) of the Revenue Act of 1921 is as follows:

SEC. 240. (a) That corporations which are affiliated within the meaning of this section may, for any taxable year beginning on or after January 1, 1922, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

The situation presented here is that on January 1, 1922, and throughout the year, the petitioners, Imperial Assurance Co., Columbia Insurance Co., Norwich Union Indemnity Co., and Phoenix Indemnity Co., were affiliated and entitled to file either separate returns or a consolidated return. Exercising their rights they elected to file separate returns and did so for that year. At the beginning of the following year 1923, the petitioner, United Firemen's Insurance Co. of Philadelphia, joined the original group of four by affiliation, and on April 9, 1923, the Eagle Fire Co. of New York was added to the group by affiliation, and for the year 1923 the entire six corporations claimed the right to file and did file a consolidated return without asking for or receiving permission of the Commissioner. It is to be observed that the original group of four continued to be affiliated throughout the taxable year 1923, as they were in 1922, except as to the addition of the two corporations above mentioned.

It is contended by the petitioners that, on January 1, 1923, when the petitioner, United Firemen's Insurance Co. of Philadelphia, became affiliated with the original group of four, this formed a new group of five, and that, on April 9, 1923, when the Eagle Fire Co. of New York became affiliated, this formed a new group of six corporations, and that each group of affiliated corporations had the independent right to elect whether to file separate or consolidated returns without asking or obtaining the consent of the respondent therefor. It is further contended that the election of the original four affiliated corporations to file separate returns in 1922 is not binding on them or their new associates for the following year.

Petitioners cite in support of their contention, among other cases, *Sweets Co. of America*, 12 B. T. A. 1285, wherein New York Sweets Co. and the Lance Cough Drop Co. were affiliated between January 1, 1919, and June 30, 1919, and on or about the latter date another corporation, the Virginian Sweets Co., joined the affiliation and the Commissioner required the first two named corporations to file a consolidated return covering the period January 1 to June 30, 1919, and then required the three corporations to file a consolidated return from July 1, 1919, to December 31, 1919.

In *Sweets Co. of America, supra,* we upheld this action of the Commissioner, saying:

From July 1, the group was not the same as it had been before and we think it must be regarded as a different taxable unit from that which existed before the Virginian Sweets Co. became a member.

Our decision was, however, reversed in *Sweets Co. of America* v. *Commissioner*, 40 Fed. (2d) 436.

It will be observed that the statute for 1921, which we have cited in the beginning of this opinion, does not use the terms, affiliated group, taxable group, unit, or entity. No rights or privileges are granted to a group, unit or entity as such. The language is plain and unequivocal "that corporations which are affiliated * * * may make separate returns or * * * make a consolidated return," and, it continues, "If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner." This provision of the 1921 Revenue Act was undoubtedly included for the purpose of securing orderly administration. It follows that under the 1921 Act, when once the right of election is exercised by the members of an affiliated group, it may not be changed as long as the original affiliation continues without first securing the permission of the Commissioner. Congress evidently thought this provision of the law was necessary, to secure good administration and

we have no right to disregard it. Only in cases where the Commissioner had abused his discretion to grant permission to change the basis would we disturb his decision.

The mere adding on or dropping off of a member from time to time does not give rise to the right of a new election. In the case of *B. Mifflin Hood Brick Co. et al.*, 19 B. T. A. 785, we had this same question before us. There, three corporations were affiliated for the taxable year 1922, but elected to file separate returns. For the year 1923 one other was added and the claim to file consolidated returns was made as in the instant case and on the same ground, viz., that the year 1923 was the first year when an election could be made by the new group, but we held that the four companies were bound by the election made by the three of them for the year 1922.

The Court of Claims, in the case of *Swift & Co.* v. *United States*, 38 Fed. (2d) 365, delivered an exhaustive and instructive opinion involving the question of affiliation, and held that where numerous corporations are affiliated at the beginning of the taxable year and the affiliated status of one is terminated, or where a new company becomes a member of the affiliated group, if the control remains in the same parent company, the existence of the affiliated group is not ended, but continues.

In the instant case the affiliation which existed in 1922 between the Imperial Assurance Co., Columbian Insurance Co., Norwich Union Indemnity Co., and Phoenix Indemnity Co., as children of the parent company, the Phoenix Assurance Co., Ltd., of Great Britain and Ireland, was not ended in 1923 by taking in United Firemen's Insurance Co. of Philadelphia and the Eagle Fire Co. of New York, children of the same parent corporation, but was merely enlarged and extended thereby.

The court in *Swift & Co.* v. *United States, supra,* pointed out in its opinion what had been the consistent ruling of the Revenue Bureau for prior years, in the following language:

For more than ten years prior to the time when this controversy arose, the Revenue Bureau had, both by regulation and application of the law, held that a change in an affiliated group caused by the dropping out of one corporation or the addition of another or both, did not end the existence of the affiliated group for the purpose of computing the tax and had never held that by such changes in an affiliated group new and separate groups were thereby created for the purpose of taxation.

The Swift & Co. affiliated group, discussed in *Swift & Co.* v. *United States, supra,* affords a graphic illustration of how the rule contended for by the petitioners in the instant case would work, if it were applied. There were sixty corporations involved in the Swift & Co. affiliation and under the rule contended for by petitioners in

the instant case, if this Swift & Co. affiliated group had elected to file separate returns in 1922, under the Revenue Act of 1921, and in 1923 one of the affiliation, say Libby, McNeill & Libby, had dropped out, then the remaining fifty-nine corporations would not have been bound by their election in 1922, but could have disregarded it and could have made a new election in 1923, merely because one member had dropped out in 1923, and could have elected to file a consolidated return. Or, on the other hand, if the whole sixty corporations had remained affiliated, as in 1922, and one new one, say the Union Meat Co., had joined the affiliated group January 1, 1923, there would have been a new affiliated group and the new group of sixty-one corporations could have disregarded the election made by the sixty corporations in 1921 to file separate returns, and could have changed the basis and filed a consolidated return for 1923. We do not think that is the correct application of section 240(a) of the Revenue Act of 1921, quoted in the beginning of this opinion. While it is true that *Swift & Co.* v. *United States, supra,* and *Sweets Co. of America* v. *Commissioner, supra,* were both cases construing section 240 of the Revenue Act of 1918, not now before us, which required affiliated corporations to file a consolidated return rather than to give them the right of election to file either a consolidated return or a separate return as did section 240 of the Revenue Act of 1921, still the interpretation made by these cases of the status of affiliated groups of corporations is, we think, equally applicable to affiliated groups governed by section 240 of the Revenue Act of 1921.

In the light of these decisions we hold that the election of the petitioner, Imperial Assurance Co., and its three affiliated corporations to file separate returns for 1922 is binding on them until permission is granted by the respondent to change to a consolidated basis and the action of respondent in computing the tax on the basis of separate returns for 1923 is approved.

The cases of *St. Louis National Baseball Club*, 15 B. T. A. 1192, and the *B. B. Bathing Park, Inc.*, 17 B. T. A. 748, are not in point and do not conflict with our ruling herein, as in those cases the question was whether the election under the statute applied to only part of a taxable year. That does not arise here as all four corporations were affiliated for the entire year 1922, the year for which the election was made. The tax will be recomputed for 1923 on a net income of $41,602.53 for the Imperial Assurance Co., and on a net income of $23,725.09 for the United Firemen's Insurance Co. of Philadelphia, as provided in paragraph 13 of the stipulation, and the corresponding last paragraph of our findings of fact.

*Judgment will be entered under Rule 50.*